**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary Lynn BARTOS, Defendant–**
**Appellant.**

No. 01–2145.

United States Court of Appeals,
Sixth Circuit.

Nov. 22, 2002.

958

Before KEITH and DAUGHTREY, Circuit Judges, and KATZ, District Judge.*

PER CURIAM.

Defendant–Appellant Gary Lynn Bartos ("Bartos") was tried and found guilty of knowingly attempting to receive a videotape containing child pornography through the mail in violation of 18 U.S.C. § 2252(a)(2). Bartos now asserts numerous trial related errors and seeks reversal

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

of his conviction. For the reasons stated herein, we find no error and affirm.

## I. BACKGROUND

In 1999, postal inspectors began a sting operation to elicit responses from persons interested in child pornography. To that end, inspector Paul Durand placed advertisements in various magazines purveying sexually explicit content.[1] The parties do not indicate precisely which advertisement in which magazine enticed Bartos to respond, but after the advertisements were published, "Gary" addressed correspondence to "Paul" at the post office box provided in the advertisements. "Gary" and "Paul" subsequently engaged in a series of correspondence in which "Gary" indicated his interest in sexually explicit materials containing "young stuff," particularly "family fun tapes, father/daughter, mother/son, brother/sister."[2]

In January 2000, "Gary" sent five dollars to obtain a videotape of the youngest females "Paul" had available, but rescinded the order before the tape was sent. "Gary's" money was returned with a letter expressing that his nervousness was understandable, because the tapes depicted girls "who haven't reached puberty yet."

In April 2000, "Gary" reinitiated contact with the following letter:

I don't know if you still have my letters. I hope you remember me. About 3 months ago you were going to sell me a tape for $5 and then more at your $25 if I wanted another but I chickened out. Is it too late for me to buy the tape? I got cold feet before but I'm still curious about seeing the tapes. I[']ll buy another at your $25 price if its good. I[']d love to see action scenes. Remember what I said I wanted to see?

I swear I'm not a member of any law enforcement agency or I am not involved in any attempt to intrap [sic] another.

J.A. 60.

"Paul's" reply indicated "I think I remember you wanted young girls, but unfortunately I threw away your letters, so I can't remember age groups/action." J.A. 65. "Gary" responded that he "would like action tape with the youngest females on tape you have." J.A. 69. "Paul" replied that he would send a sample tape of girls ages 10 and 13 engaging in sexual relations with their parents and requested that "Gary" indicate when he would be home to receive the sample tape. "Paul" also indicated that for full price, he would send a tape of a seven year old girl being sexually violated in a doctor's office.

"Gary" subsequently replied:

I'll make sure I'm home all day on the 24th and 25th. After I get paid at the end of next week I'll send full price for a longer one the one about the doctors office, that sounded good. I know your [sic] not just giving them away I don't blame you I wouldn't either.

J.A. 75.

On June 1, 2000 a postal inspector acting as a mail carrier delivered a videotape containing child pornography entitled "All In The Family" to the Bartos residence. Defendant was not at home and his moth-

---

1. The ads generally read:
   W/M mid 40's, seeking like minded individuals who enjoy forbidden love. I enjoy watching and swapping, XXX videos and have a wide Varity [sic] (lotta girls unposed, family fun 18/older and toys). I would like to become friends. Write to Paul....

   J.A. 101.

2. An analysis of the letters from "Gary" indicated that all were in Defendant's handwriting and that his fingerprints were on some of the letters.

er, with whom he was living at the time, accepted delivery of the package. When Bartos did not arrive home by 6 p.m., postal inspectors obtained consent to search the residence. The inspectors retrieved the child pornography tape, as well as a copy of Swinging Lifestyles of Michigan.

On February 15, 2001 a grand jury indicted Bartos on one count of attempted receipt of child pornography sent through the mail in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).[3] In a one day jury trial conducted on April 30, 2001, Bartos was tried and found guilty. The sole issue presented at trial was whether Bartos knew the videotape contained child pornography.

At the commencement of voir dire, the district court made preliminary comments to the venire, including a statement regarding the importance of jury service. The contested remarks include a comment that a function of jury service is to determine the level of justice in the local community. Bartos did not object to the statements at the time they were made.

During voir dire, and again at trial, the prosecution made allegedly prejudicial comments regarding the nature of certain exhibits and potential exhibits. Bartos attributes error to the government's reference during voir dire to certain sexually explicit material as "pretty repulsive." Bartos also contests the reference during trial to pictures in a "swinger's" magazine as "fairly offensive."

Pursuant to Federal Rule of Criminal Procedure 29, Bartos moved for acquittal at the close of the government's case, and again at the close of all evidence. In support of his motions, Bartos argued that there was no direct evidence, and insufficient circumstantial evidence, to establish Bartos knew he was receiving child pornography. The district court denied both motions.

Defense counsel also requested a jury instruction that the court denied.[4] The court's stated reason was that such information was not part of the Sixth Circuit pattern jury instructions and the court was reluctant to "upset the symmetry of what the Sixth Circuit has." J.A. 277.

---

**3.** (a) Any person who—

\* \* \*

(2) knowingly receives, or distributes any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce by any means including by computer or through the mails, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct;

\* \* \*

shall be punished as provided in subsection (b) of this section.

(b)(1) Whoever violates, or attempts or conspires to violate, paragraphs (1), (2), or (3) of subsection (a) shall be fined under this title or

imprisoned not more than 15 years, or both, but if such person has a prior conviction under this chapter, chapter 109A, or chapter 117 [18 U.S.C. §§ 2251 et seq., 2241 et seq., or 2421 et seq.], or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 5 years nor more than 30 years.

18 U.S.C. § 2252(a)(2), (b)(1).

**4.** Defendant requested the following instruction: "Nonobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment, and so an attempt to possess such materials is not a violation of the law." J.A. 18.

At the end of the one day trial, the jury deliberated for approximately one hour and returned a guilty verdict. Bartos was sentenced on August 10, 2001 to thirty-seven months imprisonment followed by a five year term of supervised release. Bartos timely filed a notice of appeal on August 16, 2001.

## II. DISCUSSION

Bartos contends he was denied a fair trial when the district court judge commented during voir dire that the jury would determine the level of justice they wanted in their community. Bartos also attributes error to the government's allegedly derogatory reference to certain sexually explicit materials during voir dire and again at trial. Bartos further asserts the court erred in refusing to instruct the jury that possession of nonobscene sexually explicit material involving persons over age seventeen is not illegal. Bartos also appeals the denial of his motions for acquittal.

### A. District Court's Comments During Voir Dire

Bartos asserts the district court committed reversible error by commenting during voir dire that a function of jury service is to determine the level of justice in the local community. The contested statement reads as follows:

> So I want you to know that we thoroughly understand, and some of you have written to me, your employers have written to me about how important your duties are, and I'm sure your family and those of you with children are making [obstructed text] sacrifice, all of you, to be here. But this [jury service] is part of our responsibility as mature adults in the community because a very valid function is performed here that's valid even beyond this particular case we're

hearing. And this is that you as a member of this community in West Michigan you are helping to determine the level of justice you want here in this, your community by virtue of the jury verdict or conclusion which you will reach in this case.

J.A. 166–67.

### 1. Standard of review

Bartos did not raise an objection at trial to the district court's voir dire comments, and thus we review the issue only for plain error. *See Johnson v. United States,* 520 U.S. 725, 732, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997). Under the plain error standard:First, the defendant must show that there was an error. Error is defined as "deviation from a legal rule ... unless the rule has been waived," and waiver is defined as the "intentional relinquishment or abandonment of a known right.'" Second, the defendant must show that the error was plain or obvious under current law. Finally, the defendant must establish that the plain error affected his substantial rights. This means that "the error must have been prejudicial: It must have affected the outcome of the district court proceedings." If these requirements are satisfied, then the court of appeals should exercise its discretion to remedy the error "if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" The Supreme Court and this court have subsequently clarified that the Olano test involves four steps.

*United States v. Carter,* 236 F.3d 777, 783–84 (6th Cir.2001) (internal citation omitted).

### 2. No error attributable to the district court's comments

Bartos asserts that the court's comments regarding the jury determining the level of justice they wanted "counter-

mand[ed] the instruction that the jury is required to follow the law." Appellant's Br. at 14. Bartos asserts he did not receive a fair trial because the district court's comments led the jury to believe it could base its decision on factors other than the law and thus violated his due process rights. Bartos equates the district court's comments with a jury nullification instruction.

■ Contrary to Bartos' assertions, the district court's comments, while perhaps inartfully phrased, do not constitute error, let alone plain error, that would compel reversal under the circumstances. The court's introductory remarks, when read in context, were delivered during the court's admonition as to the importance of jury service. Moreover, during the formal jury charge, the district court instructed the jury that it was to consider only the evidence in the case, without bias, without reference to any attorney comments, and without imputing any special motivation on the court's part to influence the jury's decision. Based on the foregoing, the district court's remarks do not afford a basis for reversal.

Even if analyzed as a jury nullification instruction, the district court's comments do not constitute reversible error. "When reviewing a jury instruction to which a defendant failed to object at trial, we review for plain error, which requires us to determine 'whether the instructions, when taken as a whole, were so clearly wrong as to produce a grave miscarriage of justice.'" *United States v. Humphrey*, 287 F.3d 422, 439 (6th Cir.2002) (quoting *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir.1992)). Viewed as a whole, the district court's comments are not properly viewed as suggesting or permitting jury nullification.

## B. Prosecutorial Misconduct

Bartos asserts he was prejudiced by the government's allegedly derogatory comments regarding sexually explicit material contained in government exhibits. Bartos specifically objects to two statements.

During voir dire, the prosecution made the following statement:

[W]e don't think we'll have to show you the videotape. It looks like the attorneys can agree that the contents of that don't have to be reviewed. But there is [obstructed text] swingers' magazine and you probably should see the ads in [obstructed text] and I'm afraid some of the pictures in this magazine are pretty repulsive. Unfortunately, we have to provide it to you. Do you think you'll be able to look at and review the evidence even though it's not particularly attractive stuff?

J.A. 181.

During trial, the prosecution commented:

And now the jurors may look at it [Ex. 37, Swinging Lifestyles of Michigan]. I caution the jurors that a lot of the pictures in here are fairly offensive, and we're going to talk only about the ones that are tabbed.

J.A. 213–14.

### 1. Standard of review

On appeal, Bartos' objections to the foregoing statements are characterized as prosecutorial misconduct. However, Bartos did not object at trial to the prosecution's comments. Therefore, these claims are reviewed for plain error. *See United States v. Modena*, 302 F.3d 626, 634 (6th Cir.2002).

In reviewing a claim of prosecutorial misconduct under the plain-error standard of review, we must first determine whether the statements at issue were

improper. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir.2001). If so, we then have to decide whether they were sufficiently flagrant to warrant reversal of the defendant's conviction despite his failure to object to them at trial. *Id.* ("Prosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error, and is grounds for reversal even if the defendant did not object to it.") (quoting *United States v. Carroll*, 26 F.3d 1380, 1385 n. 6 (6th Cir.1994)).

*Id.*

The Court will not overturn a verdict unless the conduct is "so pronounced and persistent that it permeated the entire atmosphere of the trial, ... or so gross as probably to prejudice the defendant." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997) (internal citation and quotation omitted) (applying harmless error standard). "The determination of whether a prosecutor's behavior constituted prejudicial error must be made in the context of the whole trial." *United States v. Francis*, 170 F.3d 546, 552 (6th Cir.1999).

### 2. Plain error analysis

#### a. Bartos does not establish impropriety of prosecutor's comments

▮ Bartos does not assert improper bolstering or vouching, nor does he allege that any disparaging comments were made in reference to his or any other witnesses' character or credibility. He instead takes issue with the prosecutor's description of certain sexually explicit materials. However, Bartos provides no cases in which comments such as those made by the pros-

ecutor in the instant action have constituted reversible error. He does not establish the existence of an error, let alone plain error, and thus fails to meet the first two elements of the plain error test. Even assuming that the first two elements of the plain error test are met, or as alternatively phrased, the prosecutor's comments were improper, Bartos does not establish that the alleged error was so flagrant as to impact a substantial right.

#### b. Prosecutor's comments were not exceptionally flagrant

With respect to prosecutorial misconduct claims, the Sixth Circuit has evaluated the third prong of the plain error test in light of the four flagrancy factors set forth in *United States v. Carroll*, 26 F.3d 1380 (6th Cir.1994). *See Carter*, 236 F.3d at 785.

To determine flagrancy, the standard set by this Court is: 1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused.

*United States v. Tocco*, 200 F.3d 401, 420–21 (6th Cir.2000) (quotation and citation omitted).[5]

#### i. Prejudicial effect

"The first [flagrancy] factor focuses on the effect of the improper arguments at issue; namely, whether they were misleading or otherwise prejudicial to the defen-

---

**5.** "To reverse a conviction because of an improper non-flagrant statement, a reviewing court must determine that: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the impropriety by failing to admonish the jury." *United States v. Tocco*, 200 F.3d 401, 420–21 (6th Cir.2000) (quotation and citation omitted). However, Bartos did not object at trial and thus the foregoing non-flagrancy standard, even if applicable, is not met.

dant." *Modena,* 302 F.3d at 635. This Circuit has made clear that expressions of personal opinions regarding the credibility of a witness or the guilt of a defendant are improper. *See, e.g., United States v. Dandy,* 998 F.2d 1344, 1353 (6th Cir.1993) (improper to "convey[ ] a conviction of personal belief regarding the witness's veracity"); *United States v. Bess,* 593 F.2d 749, 755 (6th Cir.1979) ("expressions of personal belief of innocence or guilt of an accused are error"). However, in the instant action, the prosecution did not express a personal opinion as to credibility or guilt. Nor did it mislead the jury as to the evidence against Bartos.

The voir dire question regarding "pretty repulsive" material was made in the context of ascertaining the venire's difficulty or bias regarding the viewing of sexually explicit material. " 'Wide discretion [is] granted to the trial court in conducting voir dire in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias.' " *Tocco,* 200 F.3d at 411 (quoting *United States v. Lanier,* 33 F.3d 639, 657 (6th Cir.1994)). Bartos would seem to benefit from such a determination so as to exclude potentially squeamish or biased jurors. *See Byrd v. Collins,* 209 F.3d 486 (6th Cir.2000) (determining propriety or questions posed "to ascertain whether or not the prospective juror could set aside his or her emotions and decide the case impartially").

The statement made during the course of trial regarding "fairly offensive" pictures, though not as strongly worded as the voir dire statement, is arguably more prejudicial because it was offered in the context of trial and was used to describe an exhibit at the time it was introduced into evidence.

Thus, the first flagrancy factor, with respect to the voir dire statement, weighs in the government's favor. The first factor, with respect to the trial statement, arguably weighs in Bartos' favor.

#### ii. Frequency of the comments

In evaluating the second factor, the Court considers "whether the improper arguments made by the prosecutor were isolated." *Modena,* 302 F.3d at 635. The prosecutor in the present case made two allegedly improper statements, one during voir dire, and one during the course of trial, which notably lasted only one day. This Court has considered the proximity of an allegedly improper statement to the initiation of jury deliberations, as well as the length of trial, as factors under this prong of the analysis. *See id.; Carter,* 236 F.3d at 788 (noting "[i]f a prosecutor's comments were simply isolated remarks made during the course of a long trial, then the error caused by such misconduct may be harmless"). However, in the instant action, "because the prosecutor did not make an extensive series of improper statements, this factor favors the government." *Modena,* 302 F.3d at 635.

#### iii. Deliberateness of the comments

Under the third factor, the court considers "whether the prosecutor deliberately or accidentally made the improper arguments in question." *Id.* Both of the allegedly improper remarks at issue could be construed as a deliberate attempt to predispose the jury to view the evidentiary material with distaste. However, for the reasons stated under the first prong of the analysis, if this factor weighs in Bartos' favor, it is only with respect to the "fairly offensive" statement made during trial.

#### iv. Strength of the evidence

"The last factor centers on whether the government had a strong case against the defendant, such that the improper arguments likely had no impact on the outcome of the trial." *Id.* In the instant action, the

prosecution produced a series of correspondence between "Gary" and "Paul" discussing sexually explicit material containing the youngest girls possible, including girls ages 10 and 13. In addition, throughout the parties' correspondence numerous references were made to the illegal nature of the parties' transaction. As discussed further *infra* Part II.D., there was ample evidence to support the verdict rendered. Therefore, the fourth flagrancy factor favors the government.

In sum, the relevant factors favor the government with respect to the comment made during voir dire. However, as in *Modena*, the foregoing factors in the instant action do not disproportionately favor either the government or Bartos with respect to the comment made during trial. Nonetheless, Bartos "bears the burden of showing that the prosecutorial misconduct in the present case was so 'exceptionally flagrant that it constitutes plain error.'" *Id.* (quoting *Carter*, 236 F.3d at 783). Bartos has not met this burden because, in light of the elements of the crime and the evidence offered against him, Bartos "cannot show that the prosecutor's isolated remarks had any effect on the jury's guilty verdict." *Id.* at 635–36; *see also Byrd*, 209 F.3d at 536 ("prosecutor's use of the term 'predator' to describe Petitioner did not deprive him of a fair trial"); *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir.1988) (denying habeas relief and holding that the petitioner defendant had not been deprived of a fair trial where the prosecutor referred to the petitioner as a "deadbeat," "thief," "creep," and "liar", the remarks were deliberate and not isolated, no curative instruction was given, and the evidence of guilt was not overwhelming).

## C. Refusal to Give Jury Instruction

The next issue concerns whether the district court erred in denying a jury instruction sought by Bartos. Defense counsel requested the following instruction:

"Nonobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment, and so an attempt to possess such materials is not a violation of the law." JA 18. The court did not give the requested instruction and instead instructed the jury as follows:

Let me emphasize that this defendant is only on trial for the particular crime charged in this indictment. This indictment accuses this defendant of attempting to commit the crime of receiving child pornography in violation of federal law. For you to find the defendant guilty of this crime, you must find that the government has proven the following elements beyond a reasonable doubt:

First, that the defendant intended to commit the crime of receiving child pornography.

\* \* \*

In order to prove the completed offense of the receipt of child pornography, the government would have to prove each of the following essential elements beyond a reasonable doubt:

First, that the defendant knowingly received ... the videotape entitled ... "All In The Family...."

Second, that the production of the visual depictions involved the use of a minor engaged in sexually explicit conduct, and the visual depictions were of such conduct.

Third, that the defendant knew the visual depictions involved the use of a minor engaged in sexually explicit conduct and knew that the visual depictions were of such conduct.

Now, the use in these instructions of the term "minor" means a person under the age of 18 years.

J.A. 308–10.

### 1. Standard of review

This Court reviews a jury charge to determine whether it fairly and adequately

submits the issues and the law. *See United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir.1993). A district court's refusal to give a jury instruction constitutes reversible error only if: (1) the refused instruction is a correct statement of the law; (2) the refused instruction is not substantially covered by other included instructions; and (3) the failure to give the refused instruction impairs the defendant's theory of the case. *Id.*

Though a jury instruction "should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation," ' *United States v. James*, 819 F.2d 674, 675 (6th Cir.1987) (citation omitted), if there exists even weak supporting evidence, "[a] trial court commits reversible error in a criminal case when it fails to give an adequate presentation of a theory of defense." *United States v. Plummer*, 789 F.2d 435, 438 (6th Cir.1986). "[J]ury instructions in a criminal case should not be analyzed in isolation, but rather must be evaluated in the context of the overall charge." *United States v. Krzyske*, 836 F.2d 1013, 1019 (6th Cir.1988) (quoting *United States v. Gray*, 790 F.2d 1290, 1297 (6th Cir.1986)), rev'd on other grounds sub nom. *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987)).

### 2. No error in refusal to give the requested jury instruction

In the instant action, there was little evidence suggesting Bartos was motivated by anything other than an intent to gain access to child pornography. Even if, as asserted by Bartos, he was attempting merely to obtain the material advertised, *i.e.*, material containing persons age 18 and older, the instruction sought was, at minimum, facially inaccurate vis-a-vis the wording of the statute.

Child pornography is defined in the relevant statute as:

(8) any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—

(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct;

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or

(D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct. . . .

18 U.S.C. § 2256.

The definition of a "minor" is "any person under the age of eighteen years." 18 U.S.C. § 2256(1). Therefore, the instruction that materials involving persons *over* age *seventeen* is protected by the First Amendment was inconsistent with the wording of the statute and potentially confusing to the jury.

■ In addition, the district court, as well as the prosecutor, clearly explained to the jury that Bartos was on trial only for attempting to receive *child* pornography. The government further explained that Bartos was innocent if the jury found that he intended to receive sexually explicit material containing only adults.[6] Moreover,

---

**6.** The government indicated during opening    arguments:

as noted by the government, the requested instruction would have unnecessarily injected the complicated issue of obscenity into the trial. When Congress enacted § 2252, it prohibited the mailing of sexually explicit material involving minors without including obscenity as an element of the offense. *See United States v. Rubio,* 834 F.2d 442, 448 (5th Cir.1987) (citing *United States v. Langford,* 688 F.2d 1088 (7th Cir.1982)). Based on the foregoing, the district court did not err in denying the requested instruction.[7]

### D.  Motion for Acquittal

Pursuant to Federal Rule of Criminal Procedure 29, at the close of the government's case, and again at the close of all evidence, Bartos moved for acquittal on the grounds of insufficient evidence to sustain a conviction. The district court denied both motions.

#### 1.  Standard of review

The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

FED. R.CRIM. P. 29(a). The test for denial of a Rule 29 judgment of acquittal is the same as for reviewing a claim that the evidence is insufficient to support a conviction. *See United States v. Abner,* 35 F.3d 251, 253 (6th Cir.1994). A challenge to the sufficiency of the evidence is reviewed *de novo. Tocco,* 200 F.3d at 424.

The Court reviews the record in a light most favorable to the prosecution and grants relief "only if it is found that upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Abner,* 35 F.3d at 253 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Under its analysis, the Court neither independently weighs the evidence nor judges the credibility of the witnesses. *See United States v. Talley,* 164 F.3d 989, 996 (6th Cir.1999).

A defendant claiming "insufficiency of the evidence bears a very heavy burden." On review, all evidence must be construed in a manner most favorable to the government. Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.

*Abner,* 35 F.3d at 253 (quoting *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.1986)).

#### 2.  The evidence adduced at trial is sufficient to sustain a conviction

To establish his insufficiency of the evidence claim, Bartos must show the government failed to prove beyond a reasonable doubt that he committed the elements of the crime for which he was charged. In

---

The defendant is not charged with adult pornography. If you find that that's what he wanted to get through the mail, then he's not guilty.
J.A. 200.

**7.** The district court did not decline the instruction on the grounds that it was erroneous, but rather on the basis of existing Sixth Circuit pattern jury instructions. However, this Court may affirm on any grounds supported by the record, even if different from the grounds relied on by the district court. *See United States v. Allen,* 106 F.3d 695, 700 n. 4 (6th Cir.1997).

order to convict Bartos under 18 U.S.C. § 2252(a)(2), the government had to establish that Bartos knowingly received child pornography and that he knew the nature of the images contained on the videotape. *See United States v. X–Citement Video,* 513 U.S. 64, 77, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).

■ Bartos argues that the prosecution presented insufficient evidence to show that he knowingly received or possessed child pornography. Though he does not contest that he knowingly ordered a videotape containing sexually explicit material, he asserts that the prosecution failed to show that he knew the videotape contained child pornography. However, the prosecution produced a series of correspondence between "Gary" and "Paul" discussing sexually explicit material containing the youngest girls possible, including girls ages 10 and 13. Bartos requested material containing young girls, and agreed to be at home to receive a sample tape containing girls ages 10 and 13 engaging in sexual relations with their parents. The person sending the requested videotape clearly indicated that the girls had not yet reached puberty and also specified their ages. In addition, numerous references were made in the correspondence to the illegal nature of the parties' transaction. "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Vincent,* 20 F.3d 229, 233 (6th Cir.1994). While rational jurors could draw more than one conclusion from the evidence, they could reasonably believe that Bartos was guilty beyond a reasonable doubt of attempting to receive child pornography. Whether or not the jury chose to believe Bartos' proffered defense that he intended to receive sexually explicit material containing only adults is a credibility determination that should not be disturbed on appeal.

### III. CONCLUSION

For the foregoing reasons, we find no error and AFFIRM the Defendant's conviction.