NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0478n.06

No. 24-3943

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 20, 2025

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| ANDREW MILLER, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: STRANCH, BUSH, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Andrew Miller appeals his criminal conviction for being a felon in possession of a firearm and his sentence, arguing that the evidence was insufficient to establish that he constructively possessed a firearm and asserts that his sentence was substantively unreasonable. For the following reasons, we **AFFIRM**.

## I. FACTUAL BACKGROUND

On November 17, 2022, a grand jury in the Northern District of Ohio charged Andrew Miller with one count of possessing a firearm with an obliterated serial number as an individual with a prior felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The charge originated from a controlled purchase in which Miller sold an AR-style rifle to a confidential informant ("CI").

At trial, Cory Miles, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), testified that a CI set up a controlled purchase of a firearm from a then-unidentified individual. The controlled purchase took place on August 4, 2022, at Dave's Market

in Ohio City, Cleveland. Agent Miles explained that just prior to the purchase, law enforcement searched the CI and his vehicle for contraband, gave the CI a transmitter to record audio, and set up recording equipment in the vehicle. As the CI drove to the purchase location, Agent Miles testified that he maintained visual sight of the vehicle and confirmed that it did not stop, no one entered it, and no one put anything inside.

ATF Special Agent Gerrod Briggs testified that he was stationed inside an unmarked vehicle in the parking lot of Dave's Market, where he observed the CI arrive, meet with the then-unknown individual, and approach that individual's car. Agent Briggs testified that, based on his training and experience, he believed the CI and the individual exchanged money in the vehicle. He then observed the individual remove a large, soft-sided bag from the trunk of the vehicle and give it to the CI. Law enforcement observed the CI return to his vehicle and put the bag in the backseat. Agent Miles testified that, after the purchase, law enforcement was unable to maintain visual sight of the CI and his vehicle; however, the equipment in the CI's vehicle recorded him as he drove to a separate location to meet law enforcement. During this time, the recording showed that he did not stop, no one entered the vehicle, and no one touched or moved the bag. When the CI met law enforcement, they removed the bag, opened it, and found a Smith and Wesson, Model M&P 15 rifle with a loaded magazine containing .223 ammunition.

At trial, the prosecution introduced surveillance video from Dave's Market that captured part of the controlled purchase as well as the then-unknown individual entering the market. Agent Miles testified that he compared the video surveillance of the unknown individual with a photograph of Miller's driver's license and confirmed they were the same individual. Agent Briggs testified that the individual he saw during the controlled purchase and on the surveillance

video was Miller. Miller's probation officer testified that the person in the surveillance video from Dave's Market was Miller.

The prosecution also introduced evidence from a cellphone seized from Miller when he was arrested on December 21, 2022. The evidence included text messages, sent from the seized cellphone to the CI, offering to sell him firearms, arranging the controlled purchase, and sending photographs of two firearms. One photograph appeared to be an AR-style rifle which had the same unique scratch marks as the rifle law enforcement recovered from the controlled purchase. Messages sent to the CI after the controlled purchase, stated "How u like the AR? I blessed you on that one." The prosecution introduced evidence showing that the cellphone's subscriber was Miller, that it had an associated iCloud account for "MillerAndrew216," and that it contained selfies of Miller as well as a picture of a credit card in Miller's name.

The jury deliberated for approximately one hour and forty-seven minutes,[1] subsequently finding Miller guilty of the felon-in-possession charge. The Presentence Investigation Report ("PSR") calculated a total offense level of 26, which included a four-level enhancement because Miller possessed a firearm with an obliterated serial number, U.S.S.G. § 2K2.1(b)(4)(B)(i), and a two-level enhancement because Miller had reason to know he was selling a firearm to a person prohibited from possessing firearms, U.S.S.G. § 2K2.1(b)(5)(B)(i). At sentencing, the district court also calculated a total offense level of 26 and a criminal history category of III, with a Guidelines range of 78–97 months. During sentencing, the court referred to a psychologist's report recommending that Miller, if released from custody, should be "immediately assessed for

---

[1] In his brief, Miller asserts that the jury deliberated for only eleven minutes. Although Miller provides no record cite for this assertion, the trial transcript shows that the jury retired to begin deliberations at 9:52 a.m. and returned with a verdict at 11:39 a.m. R. 131, Trial Tr. 1431–33. The jury then deliberated for an additional eleven minutes regarding the issue of forfeiture. *Id.* at 1440.

imminent risk of harm to others." R. 123, Sentencing Tr., PageID 717. Miller then stated, "I'm trying to kill the person who shot me so I won't be shot again. Yes, you're right, I am." *Id.* at PageID 717, 718. The court asked him if he was "focused on retaliation," to which Miller responded, "Of course. I'm not trying to get shot again. I'm trying to defend myself. I'm trying to stand my ground." *Id.* at PageID 718.

The court imposed a 130-month sentence to be followed by three years of supervised release. Miller filed this timely appeal, challenging the sufficiency of the evidence and the substantive reasonableness of his sentence.

## II.   ANALYSIS

Miller challenges his conviction, asserting that there was insufficient evidence to prove that he possessed a firearm, and contends that his 130-month sentence was substantively unreasonable. We will address each issue in turn.

### A.    Sufficiency of the Evidence

A challenge to the sufficiency of the evidence in a criminal case is reviewed de novo. *United States v. Woods*, 14 F.4th 544, 551 (6th Cir. 2021). The court must "review the evidence in the light most favorable to the government," and it "will affirm a defendant's conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020) (emphasis in original)). "We can neither independently weigh the evidence, nor make our own assessment of the credibility of the witnesses who testified at trial." *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014).

Miller challenges his conviction under § 922(g), arguing that there was insufficient evidence to prove that he constructively possessed a firearm based on the lack of physical evidence

presented at trial and the length of jury deliberation. To establish a violation of § 922(g), the Government must prove beyond a reasonable doubt that (1) the defendant had a prior felony conviction; (2) he knew he had a prior felony conviction; (3) he knowingly possessed a firearm or ammunition; and (4) the firearm or ammunition traveled in or affected interstate commerce. *United States v. Johnson*, No. 23-3535, 2025 WL 720930, at *3 (6th Cir. Mar. 6, 2025); *see also Rehaif v. United States*, 588 U.S. 225, 237 (2019). In this case, the parties dispute only whether the evidence at trial was sufficient to support a finding that Miller constructively possessed a firearm. "Constructive possession is sufficient to give rise to criminal liability under § 922(g) . . . and [it] may be proven by circumstantial evidence." *United States v. Montague*, 438 F. App'x 478, 480 (6th Cir. 2011) (citation modified); *see also United States v. Fairley*, 137 F.4th 503, 512 (6th Cir. 2025).

"Constructive possession exists when the defendant does not have possession [of contraband] but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Fisher*, 824 F. App'x 347, 356 (6th Cir. 2020) (citation modified) (citing *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008)). "[M]ore evidence than mere physical proximity of the defendant to the [contraband] is required. It is necessary that some nexus between the accused and the [contraband] be established." *United States v. Bailey*, 553 F.3d 940, 944 n.3 (6th Cir. 2009). That nexus may be sufficiently established by "eyewitness testimony describing a firearm actually possessed by the defendant that matches a firearm later recovered by the police." *Fisher*, 824 F. App'x at 356; *see also United States v. Arnold*, 486 F.3d 177, 182–83 (6th Cir. 2007) (collecting cases).

In this case, the Government presented evidence from which a rational juror could conclude that Miller constructively possessed an AR-style rifle and was trying to sell it. The cellphone evidence showed that Miller texted the CI offering to sell an AR-style rifle and pistol, sent pictures of those firearms, and arranged a sale of them. Although Miller contested ownership of the phone, a rational trier of fact could conclude that he was the owner based on the phone's contents, the iCloud account and subscriber information associated with the phone, and the fact that Miller possessed the phone when he was arrested.

Furthermore, the Government presented sufficient evidence at trial from which a rational juror could conclude that it was Miller who went to the controlled buy on August 4, 2022, and sold the CI an AR-style rifle. Agent Briggs observed Miller during the controlled purchase and testified that, based on his training and experience, Miller sold the CI the AR-style rifle. Surveillance video and testimony also identified Miller as the individual who met with the CI during the controlled purchase. Additionally, the Government presented evidence that after the controlled purchase, Miller texted the CI, asking "How u like the AR? I blessed you on that one." This evidence was sufficient to support a finding that Miller constructively possessed a firearm.

Moreover, Miller's contention that this evidence is insufficient to support a conviction is unpersuasive. Miller ignores the evidence that the Government presented at trial: namely, witness testimony and video surveillance of the controlled purchase, multiple identifications of Miller as the person who sold the firearm, and text messages from Miller offering to sell firearms to the CI, setting up the purchase, and confirming the sale afterwards. Instead, Miller points to numerous alleged shortcomings in the Government's evidence, including an absence of DNA and fingerprint evidence, a lack of quality photographs of the transaction, and an insufficient investigation into

the vehicle Miller used during the purchase, the bag that contained the rifle, and how the CI obtained Miller's contact information.

Regarding the lack of DNA and fingerprint evidence, Miller cites no case law supporting his assertion that such physical evidence is required to sustain a § 922(g) conviction. Indeed, our case law supports the opposite. *See United States v. Pinkney*, 644 F. App'x 478, 483 (6th Cir. 2016) (finding that appellant's argument that the evidence at trial was insufficient because of the lack of fingerprint and DNA evidence had no merit) (citing *United States v. Morrison*, 549 F.3d 543, 545–46 (6th Cir. 2010)); *Garcia*, 758 F.3d at 721 (rejecting appellant's "attempt to shift the court's focus to [fingerprint and DNA] evidence that the [Government] *did not* present to the jury" because "we may not consider the potential magnitude of the evidence not presented"). Miller's remaining challenges improperly ask us to re-weigh the evidence and to substitute our judgment for that of the jury. *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) ("[Courts] do not reweigh the evidence, reevaluate the credibility of witnesses, or substitute [our] judgment for that of the jury.") (citation omitted).

Miller's final argument, that the jury deliberation was too short to support his conviction, is similarly unpersuasive. Although Miller cites numerous secondary sources discussing the importance of jury deliberation, he cites no case law requiring a minimum length of jury deliberation. And we have sustained a criminal conviction where the jury deliberated for a shorter period than the jury deliberated here. *Compare* R. 131, Trial Tr., PageID 1431–33 (showing jury deliberated for approximately an hour and 47 minutes), *with United States v. Bartos*, 51 F. App'x 957, 961, 968 (6th Cir. 2002) (finding evidence sufficient to sustain conviction where jury had deliberated for approximately one hour).

Accordingly, we reject Miller's challenge to the sufficiency of the evidence.

**B.      Substantively Reasonable Sentence**

Miller also challenges the substantive reasonableness of his sentence, asserting that the district court gave too much weight to Miller's desire for retaliation and created an unwarranted sentence disparity.  Courts review a criminal sentence's procedural and substantive reasonableness using a deferential abuse of discretion standard.  *United States v. Miller*, 73 F.4th 427, 431 (6th Cir. 2023).  In this case, the parties only dispute the substantive reasonableness of Miller's sentence.

"Substantive reasonableness focuses on whether a 'sentence is too long (if a defendant appeals) or too short (if the government appeals).'"  *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)).  A sentence is substantively reasonable where it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)."  *United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015).  A sentence may be substantively unreasonable "when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor."  *United States v. Horton*, 638 F. App'x 469, 471–72 (6th Cir. 2016); *see also United States v. Warren*, 771 F. App'x 637, 641–42 (6th Cir. 2019) (reversing upward variance, even though district court thoroughly discussed several § 3553(a) factors, because court placed too much weight on a single factor).  A district court's weighing of any given factor is "a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much."  *Rayyan*, 885 F.3d at 442.

And while a sentence that falls within a defendant's Guidelines range "is presumed reasonable," *United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir. 2010), if a sentence falls outside that range, it "is not per se or even presumptively *un*reasonable," *United States v. Borho*, 485 F.3d 904, 912 (6th Cir. 2007). "[T]his circuit gives sentencing courts broad discretion to fashion individualized, fact-driven sentences without interference from appellate courts." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019). To avoid sentence disparities, the Guidelines provide a transparent and predictable sentencing range for defendants who fall within the "heartland" of average cases "to which the Commission intends individual Guidelines to apply." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)). When a district court varies outside the Guidelines range, then, we expect the court to explain what distinguishes that defendant's case from a typical one. *Id.* If the district court reasonably explains why the defendant's unique circumstances fall outside the "heartland" of cases affected by the relevant Guidelines, then the "court's decision to vary . . . may attract greatest respect." *Id.*

In imposing an above-Guidelines sentence in this case, the district court considered the relevant § 3553(a) factors, including the nature and circumstances of the offense, Miller's history and characteristics, the need for the sentence imposed, the applicable Guidelines range, and the need to avoid unwarranted sentence disparities. Specifically, the court pointed out that Miller had attempted to sell more firearms than those charged in the indictment, had been aggressive with the Marshalls, had stabbed an inmate in pretrial detention, had a violent criminal history that was underrepresented in the PSR, and had been hyper-focused on retaliation. The court further reasoned that Miller "does not respect the law in any measure at present, and he's likely to promptly return to violent criminal conduct, perhaps even harming those he believes are

responsible for him being shot, all of [which] weighs in favor of a significant sentence." R. 123, PageID 718. The court then imposed a 130-month sentence, which constituted a 33-month upward variance. Contrary to Miller's assertion, the court did not abuse its discretion in how it weighted Miller's focus on retaliation. The court's conclusion that Miller posed a threat to the public and to law enforcement was not unreasonable, and it was "distinguishable from mere speculation 'that an individual will cause some particular harm at a future point in time.'" *United States v. Scurry*, 834 F. App'x 178, 188 (6th Cir. 2020) (citing *United States v. Tristan-Madrigal*, 601 F.3d 629, 635 (6th Cir. 2010)). The court's decision was neither arbitrary nor based on impermissible factors.

And although Miller argues that the court's sentence created unwarranted sentencing disparities, the court properly explained the reason for the upward variance and why this case fell outside the heartland of cases. Specifically, the court noted that Miller had "time and again . . . been incarcerated for lengthy terms only to reoffend promptly after being released," and given the lack of deterrent effect, the court found that a longer sentence was necessary. R. 123, Page ID 717–18. The court concluded that a sentence ten months longer than Miller's previous sentence was warranted given Miller's lengthy criminal history and inability to separate himself from criminal conduct. We have previously found that an upward variance was reasonable given the seriousness of the defendant's felon-in-possession offense and his inability to learn from his past mistakes and incarcerations. *United States v. Jeter*, 721 F.3d 746, 757–58 (6th Cir. 2013). Indeed, in determining whether an upward variance is warranted, we have often considered the need to ensure respect for the law, the defendant's history and characteristics, and the likelihood that he will re-offend. *Horton*, 638 F. App'x at 472–73.

Given these facts, and the deference we must pay to the district court's consideration of the § 3553(a) factors, we find that the court did not abuse its discretion in imposing an upward variance of 33 months. Accordingly, we reject Miller's challenge to the substantive reasonableness of his sentence.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM Miller's conviction and sentence.