RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0305P (6th Cir.)
File Name: 02a0305p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

*v.*

No. 00-2477

MICHAEL JOHN MODENA,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00047—Robert Holmes Bell, Chief District Judge.

Argued: June 21, 2002

Decided and Filed: September 9, 2002

Before: CLAY and GILMAN, Circuit Judges; HAYNES,
District Judge.

---

## COUNSEL

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC
DEFENDER'S OFFICE, Grand Rapids, Michigan, for
Appellant. Donald A. Davis, ASSISTANT UNITED

---

[*] The Honorable William J. Haynes, Jr., United States District Judge
for the Middle District of Tennessee, sitting by designation.

STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant.  Donald A. Davis, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

————————

**OPINION**

————————

RONALD LEE GILMAN, Circuit Judge.  Michael John Modena was convicted of conspiracy to defraud the United States because of his participation in a tax-evasion scheme. He now appeals his conviction and sentence, arguing that (1) the district court failed to properly determine whether he knowingly and voluntarily waived his right to counsel, (2) the government improperly introduced evidence regarding his coconspirators' convictions, (3) the government presented inadmissible summaries of the evidence, (4) the government engaged in prosecutorial misconduct, and (5) the district court imposed unjustified special conditions on his term of supervised release.  For the reasons set forth below, we **AFFIRM** Modena's conviction, **VACATE** his sentence, and **REMAND** the case for resentencing.

## I.  BACKGROUND

This case arises from the efforts of five brothers to avoid paying federal income taxes.  These men, Denver Lee Russell, Orval Dean Russell, Timothy Patrick Russell, Daniel Thomas Russell, and Jack Allen Russell (referred to collectively as the Russell Brothers), purchased sham trusts that they used to hide their income.  Modena helped set up and administer several of these trusts.

In April of 1999, a federal grand jury returned a 26-count indictment against the Russell Brothers and Modena.  Count 1 charged all of the defendants with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  The remaining

counts charged only the Russell Brothers with failure to file income tax returns and income tax evasion, in violation of 26 U.S.C. §§ 7203 and 7201, respectively. In September of 1999, the Russell Brothers were convicted on all counts. Modena, however, evaded arrest until June of 2000. His case was set for trial in the United States District Court for the Western District of Michigan shortly after his arrest.

At the initial pretrial conference, Modena informed the magistrate judge that he wished to proceed pro se. The magistrate judge then asked Modena a series of questions to ensure that he understood the consequences of his decision to represent himself. Modena indicated that he understood the difficulties involved in self-representation, but wished to do so anyway. Based upon Modena's answers and demeanor, the magistrate judge concluded that Modena "knowingly and voluntarily waived his right to counsel." The magistrate judge nevertheless appointed the Federal Public Defender to serve as standby counsel in the event that Modena changed his mind.

Five days later, Modena sent a letter to the district court requesting that counsel be appointed on his behalf. But he withdrew this request in a subsequent letter that he sent to the district court three days thereafter. At the final pretrial conference before the district court, Modena again stated his desire to represent himself. The district court therefore permitted him to do so without further inquiry.

Modena was tried before a jury in August of 2000. To establish Modena's guilt on the conspiracy count, the government called 30 witnesses and offered more than 200 exhibits. Modena sat silent throughout the entire trial, raising no objections and presenting no defense on his own behalf. After a three-day trial, the jury found Modena guilty on the conspiracy count.

Modena then sent a letter to the district court requesting that he receive the assistance "of a more qualified attorney in tax related matters" during the sentencing proceedings. While waiting for a response from the district court, Modena was

asked to participate in an interview with a presentence investigator. Modena declined, explaining that he would not participate in the interview without the assistance of counsel. In response, the investigator claimed that Modena had already declined to have appointed counsel present, and therefore no longer had the right to counsel. Modena still refused to participate in the interview. The presentence investigation report (PSR) was thus prepared without his input. Modena later received a letter from the district court informing him that the Federal Public Defender had already been appointed to provide any assistance that he might need.

At the sentencing hearing, the district court sentenced Modena to 60 months in prison, followed by 3 years of supervised release. The district court later issued its sentencing order, which added special conditions to Modena's term of supervised release. Specifically, the order provided that Modena must receive testing and treatment for alcohol and drug abuse and abstain from the use of alcoholic beverages. Modena now appeals his conviction and sentence.

## II. ANALYSIS

### A. Waiver of counsel

Modena contends that the district court erred in concluding that he knowingly and voluntarily waived his right to counsel, a right guaranteed by the Sixth Amendment to the United States Constitution. He presents this argument for the first time on appeal, however, and must therefore establish that the district court committed plain error in making that determination. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998) ("Where, as here, a criminal defendant has failed to object below, he or she must demonstrate that the error was plain as defined by Fed. R. Crim. P. 52(b) before we may exercise our discretion to correct the error.") (footnote omitted). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected [the] defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public

that restrict a probationer's freedom must be especially fine-tuned.").

This court has also held that a district court must, "at the time of sentencing, . . . state in open court the reasons for its imposition of the particular sentence, including its rationale for mandating special conditions of supervised release." *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001) (internal quotation marks omitted). The district court failed to do so in the present case. Instead, the only mention of the special conditions is in the sentencing order that the court issued after the conclusion of the hearing.

Based on all of the above, we conclude that the district court abused its discretion in requiring Modena to undergo testing and treatment for drug and alcohol abuse and to abstain from the use of alcoholic beverages during his three-year term of supervised release. We therefore vacate Modena's sentence and remand the case with instructions to resentence Modena without the special conditions at issue. *Bass*, 121 F.3d at 1225 (vacating the defendant's sentence and remanding the case to the district court with instructions that it eliminate the special conditions regarding the possession and use of alcohol that were imposed without any basis in the record); *Prendergast*, 979 F.2d at 1293 (same).

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Modena's conviction, **VACATE** his sentence, and **REMAND** this case for resentencing without the special conditions on Modena's supervised release that require him to undergo testing and treatment for drug and alcohol abuse and to abstain from the use of alcoholic beverages.

(9)    The defendant shall participate in a program of testing and treatment for alcohol abuse, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer.

. . .

(11)    The defendant shall abstain from all use of alcoholic beverages.

Neither alcohol nor drug use played a role in Modena's crime. Nor does the record indicate that Modena has any substance abuse problem. Indeed, the PSR specifically states that the probation officer "has no information pertaining to substance abuse/use pertaining to Mr. Modena." The special conditions at issue, therefore, do not bear a reasonable relationship to either rehabilitating Modena or protecting the public. *United States v. Prendergast*, 979 F.2d 1289, 1292-93 (8th Cir. 1992) (striking special conditions that prohibited the defendant from purchasing, possessing, or using alcohol, where the record did not show that "alcohol was a contributing cause of his crime or that the defendant otherwise is in need of any substance abuse rehabilitation").

But the government contends that Modena is to blame for the absence of information as to whether he has a substance abuse problem. It points out that Modena refused to participate in an interview with the presentence investigator, during which time he would have had the opportunity to provide an account of his past drug and alcohol use, or his lack thereof. Modena counters that he did not participate in the interview as a result of the confusion regarding his legal representation. We need not decide which party is responsible for the record being silent as to whether Modena has a substance abuse problem. A defendant's failure to provide information to a presentence investigator does not give the district court license to impose any special condition it chooses. *See United States v. Bass*, 121 F.3d 1218, 1223 (8th Cir. 1997) (noting that a district court's discretion in imposing special conditions "is not unfettered"); *United States v. Tolla*, 781 F.2d 29, 34 (2d Cir. 1986) ("[C]onditions

reputation of the judicial proceedings." *United States v. Schulte*, 264 F.3d 656, 660 (6th Cir. 2001).

We must first decide whether the district court properly determined that Modena had waived his right to counsel. This court has held that, before allowing a criminal defendant to represent himself, a district court must conduct a colloquy substantially similar to the one set forth in the *Bench Book for United States District Judges*. *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir. 1987). The required colloquy consists of several questions and statements that are designed to gauge the defendant's understanding of the legal proceedings, to assess his willingness to bear the consequences of proceeding pro se, and to urge him to accept the assistance of appointed counsel. *Id*. at 251-52. This court also requires the district court to make an express finding that the defendant has knowingly and voluntarily waived his right to counsel under the Sixth Amendment. *Id*. at 250. In the present case, Modena concedes that the magistrate judge conducted the required colloquy and concluded that Modena knowingly and voluntarily waived his right to counsel. He maintains, however, that the district court had an obligation to conduct the waiver-of-counsel proceeding a second time after Modena had expressed doubts about representing himself prior to trial.

We disagree. A magistrate judge is authorized by statute to determine whether a criminal defendant has effectively waived the right to counsel. 28 U.S.C. § 636(b)(1)(a) ("[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court . . . ."). The magistrate judge in the present case exercised that authority and followed the procedures required by this court in doing so. Although Modena had an interim change of heart regarding his decision to proceed pro se, he ultimately gave the district court no reason to suspect that he was uncertain about representing himself. Specifically, he sent the district court a letter explicitly withdrawing his earlier request to be represented by appointed counsel and, at the final pretrial conference, reiterated his desire to proceed pro se.

Modena gives no compelling reason why we should break new ground by requiring that a district court reevaluate a magistrate judge's acceptance of the defendant's waiver of counsel solely because the defendant at one point had second thoughts about representing himself. To require such a reconsideration would defeat one of the key purposes of the Magistrates Act; namely, the conservation of judicial resources. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) (recognizing that "[t]his duplication of time and effort [by a district court and a magistrate judge] wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act"). The district court, therefore, did not commit any error, plain or otherwise, in accepting Modena's waiver of his right to counsel.

## B.    Coconspirators' convictions

Modena next maintains that the admission of testimony regarding the convictions of his coconspirators, the Russell Brothers, deprived him of a fair trial. During direct examination, the prosecutor questioned Daniel Russell as to whether he and his brothers had been convicted of conspiracy. The questioning went as follows:

Q.    You were on trial in this courtroom last year in August, were you not?
A.    Yes, I was.
Q.    And you were convicted of the five individual counts against you as well as the conspiracy count, were you not?
A.    Yeah.
Q.    And your brothers were likewise convicted of the same counts?
A.    Yes, sir.

Modena did not object to the government's line of questioning, so we are limited to the determination of whether the admission of the testimony at issue constituted plain error. *Koeberlein*, 161 F.3d at 949.

conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

Federal law requires that a district court impose specified conditions on a term of supervised release under certain circumstances, none of which is at issue in the present case. 18 U.S.C. § 3583(d). A district court may also impose "special" conditions of supervised release that it deems appropriate. *Id*. To impose a special condition, however, the district court must determine, among other things, that the condition

is reasonably related to specified sentencing factors, namely the nature and circumstances of the offense and the history and characteristics of the defendant, and the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

*Ritter*, 118 F.3d at 504; *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992) (recognizing that the imposition of a special condition is not an abuse of discretion if that condition is "reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public").

Modena claims that the district court abused its discretion by imposing the following special conditions on his supervised release:

. . .

(8) The defendant shall participate in a program of testing and treatment for drug abuse, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer.

The third factor requires us to consider whether the prosecutor deliberately or accidentally made the improper arguments in question. Both of the improper remarks at issue appear to be deliberate attempts to bolster the government's case against Modena. The government, moreover, does not contend that the arguments were unintentional. Accordingly, this factor favors Modena.

The last factor centers on whether the government had a strong case against the defendant, such that the improper arguments likely had no impact on the outcome of the trial. As discussed above in Part II.B., the government offered a substantial amount of evidence to establish Modena's guilt, evidence that Modena failed to rebut. This factor thus favors the government.

In sum, the relevant factors do not disproportionately favor either the government or Modena. But Modena bears the burden of showing that the prosecutorial misconduct in the present case was so "exceptionally flagrant that it constitutes plain error." *Carter*, 236 F.3d at 783 (internal quotation marks omitted). Modena has not met this burden because, in light of the evidence offered against Modena at trial, he cannot show that the prosecutor's isolated remarks had any effect on the jury's guilty verdict. Although regrettable, the prosecutor's improper arguments thus do not warrant the reversal of Modena's conviction.

### E.   Conditions of supervised release

Modena's final challenge relates to his sentence. He contends that the district court erroneously imposed special conditions on his supervised release. In particular, Modena claims that the district court lacked any basis for requiring him to receive testing and treatment for drug and alcohol abuse and to abstain from the use of alcoholic beverages during his three-year term of supervised release. We will set aside a supervised-release condition only if we determine that the district court abused its discretion in imposing the condition. *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997). "Abuse of discretion is defined as a definite and firm

Evidence that a coconspirator has been convicted of conspiring with a criminal defendant is generally inadmissible, because it might lead the jury to "regard the issue of the remaining defendant's guilt as settled and [conclude that] the trial is a mere formality." *United States v. Griffin*, 778 F.2d 707, 711 (11th Cir. 1985); Fed. R. Evid. 403 (providing that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"). If the coconspirator testifies at trial, however, evidence of his prior convictions may be introduced so that the jury can accurately assess his credibility. *United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996); Fed. R. Evid. 609(a) (allowing evidence of prior convictions for the purpose of evaluating a witness's credibility). In allowing the admission of such evidence, however, the district court must instruct the jury that it may not consider the coconspirator's prior conspiracy conviction as evidence of the defendant's guilt. *Sanders*, 95 F.3d at 454 ("When a guilty plea or conviction is introduced into evidence, the district court is required to give a cautionary instruction to the effect that the jury may use the conviction or guilty plea only to determine the testifying witness's credibility.").

Daniel Russell testified at trial as a witness for the government. The prosecutor, therefore, was entitled to question Russell about his prior conspiracy conviction in order to "remove the sting" of any attempt to impeach his credibility with his conviction on cross-examination. Fed. R. Evid. 609 advisory committee's note. But the district court was required to issue a cautionary instruction after Russell acknowledged his conspiracy conviction. *Sanders*, 95 F.3d at 454. The district court failed to do so. As a result, the admission of Daniel Russell's testimony concerning his prior conspiracy conviction was erroneous. Furthermore, Daniel Russell was the only one of the Russell Brothers to testify at trial, and thus his testimony regarding the convictions of his brothers was not admissible for the purpose of assessing their credibility.

Modena must do more, however, than simply show that the district court erred in admitting testimony regarding the Russell Brothers' conspiracy convictions. Under the plain-error standard of review, he must also establish that the admission of this testimony affected his substantial rights. *United States v. Schulte*, 264 F.3d 656, 660 (6th Cir. 2001). An error affects the substantial rights of a criminal defendant when it is prejudicial; that is, when it "affect[s] the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). In determining whether an error is prejudicial, we must examine it in the context of the record as a whole. *United States v. Young*, 470 U.S. 1, 16 (1985) (holding that an appellate court must view "a claim [of plain error] against the entire record").

At trial, Daniel Russell testified that his brothers purchased trusts from Modena in order to hide their income. He also explained that Modena marketed these trusts as a means to avoid federal income taxes. In addition, three other individuals testified that they served as trustees for trusts set up by Modena on behalf of the Russell Brothers, but that they never performed any substantive functions as trustees. They instead allowed Modena to use their names and signed whatever documents he presented to them. Furthermore, an agent with the Internal Revenue Service testified that, based upon his knowledge and experience, the trusts established by Modena lacked any economic substance and were designed solely to hide income. Modena offered no rebuttal to any of this testimony.

As shown above, the government offered ample evidence to establish Modena's guilt beyond a reasonable doubt. The strength of the government's case against Modena makes it highly unlikely that the admission of the testimony concerning the Russell Brothers' conspiracy convictions had any effect on the jury's verdict. Furthermore, Daniel Russell acknowledged the convictions without any elaboration, and the government did not emphasize this aspect of Russell's testimony. For all of these reasons, we conclude that the admission of this testimony did not constitute plain error.

tolerate these types of crimes" was not improper) (internal quotation marks omitted). Indeed, Modena acknowledges that this argument, standing alone, is not improper. But he maintains that the statement constitutes prosecutorial misconduct when viewed in connection with the other improper arguments set forth above. He fails to explain, however, how an acceptable remark made by a prosecutor becomes improper solely because the prosecutor engaged in misconduct at some other point during the closing argument.

Based on the above analysis, we conclude that the prosecutor improperly vouched for Daniel Russell's credibility and pressured the jury to return a guilty verdict. The question, then, is whether the prosecutor's statements were so flagrant as to warrant reversing Modena's conviction. *Carroll*, 26 F.3d at 1385 n.6. This court has identified four factors to guide this inquiry: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Carter*, 236 F.3d at 783.

The first factor focuses on the effect of the improper arguments at issue; namely, whether they were misleading or otherwise prejudicial to the defendant. In the present case, the prosecutor's arguments did not mislead the jury as to the evidence against Modena. They did, however, prejudice Modena both by implicitly vouching for the testimony of Daniel Russell and by improperly pressuring the jury to find Modena guilty. This factor therefore favors Modena.

In evaluating the second factor, we consider whether the improper arguments made by the prosecutor were isolated. The prosecutor in the present case made two improper statements, both of which were made during closing argument. But because the prosecutor did not make an extensive series of improper statements, this factor favors the government.

*Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Id*. (internal quotation marks omitted). In the present case, the prosecutor made vague statements to the effect that several witnesses were no longer protesting the federal income tax. These statements by themselves are not indicative of the prosecutor's personal view as to the witnesses' credibility. But the prosecutor also shared with the jury his evaluation that Daniel Russell is now a "law-abiding man." A law-abiding man does not, of course, commit perjury. The prosecutor's description of Russell therefore at least implicitly conveyed to the jury the prosecutor's personal belief that Russell is a credible witness. Such vouching is impermissible.

Modena also claims that the prosecutor improperly pressured the jury to return a guilty verdict by stating that "I think we can all take some measure of satisfaction in the investigation and prosecution of the Russells, of John Modena. But we're not finished. We're not finished until this verdict is returned." Statements that exhort the jury to "do its job" are improper. *United States v. Young*, 470 U.S. 1, 18 (1985). The above-quoted argument, although ambiguous, can be construed as pressuring the jury to help the government finish its self-described laudable goal of bringing Modena to justice. This kind of pressure "has no place in the administration of criminal justice." *Id*.

According to Modena, the prosecutor engaged in further misconduct when he implored the jury to "tell, through your verdict, tell Michael John Modena that what he did with the Russell [B]rothers was criminal and that the tax laws of this country apply to Michael John Modena." This court has held that arguments that invite the jury to "send a message" to the defendant through its verdict, although disfavored, do not "cross the line into prosecutorial misconduct." *United States v. Reliford*, 58 F.3d 247, 251 (6th Cir. 1995) (concluding that the prosecutor's argument to the jury that it should "return a verdict that tells the defendant . . . that the citizens . . . won't

## C.    Summaries

Modena also challenges the admission of several evidentiary summaries that were introduced by the government. He argues that the government did not comply with the requirements for admitting these summaries as set forth in Rule 1006 of the Federal Rules of Evidence. Because Modena did not object to the admission of the summaries, we consider his challenge under the plain-error standard of review. *Koeberlein*, 161 F.3d at 949.

Rule 1006 governs the admissibility of evidentiary summaries. It provides in pertinent part as follows:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place.

Fed. R. Evid. 1006. This court has interpreted Rule 1006 as imposing five requirements for the admission of an evidentiary summary: (1) the underlying documents must be so voluminous that they cannot be conveniently examined in court, (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place, (3) the underlying documents must be admissible in evidence, (4) the summary must be accurate and nonprejudicial, and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation. *United States v. Bray*, 139 F.3d 1104, 1109-10 (6th Cir. 1998).

Modena maintains that the government failed to satisfy the first three requirements set forth above in introducing numerous summaries of the Russell Brothers' financial transactions. He maintains that the "most significant violation of Rule 1006" was the government's alleged failure to make the documents underlying these summaries, labeled as Exhibits 63-76, 78-123, 156-60, 167, and 169, available for

examination or copying.  In response to this allegation, the government contends that it filed a Statement of Discovery that informed Modena that, upon request, it would make any records intended for use at trial available for inspection.  It points out that Modena never made such a request.

But Rule 1006 "operates independently of the discovery rules . . . ." *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 8 (1st Cir. 1996).  The government, therefore, had a duty to "state when and where" the documents underlying its summaries could be viewed, without regard to whether Modena made a request for these records.  *Id*. ("Thus, to satisfy the 'made available' requirement, a party seeking to use a summary under Rule 1006 must identify its exhibits as such, provide a list or description of the documents supporting the exhibit, and state when and where they may be reviewed.").  Moreover, the Statement of Discovery filed by the government provided that Modena could inspect the documents only if he allowed the government to examine the materials that Modena planned to introduce at trial.  Nothing in Rule 1006 indicates that the right to examine or copy records underlying a summary may be conditioned in such a manner.  *Id*. (recognizing the "absolute right" to examine the records underlying a summary).

The district court therefore erred in admitting the challenged summaries into evidence.  But we conclude that the district court did not commit plain error in doing so.  First, as set out above in Part II.B., the government offered compelling, unrebutted evidence of Modena's guilt without regard to the summaries in question.  Second, because Modena does not contend that the summaries inaccurately reported the Russell Brothers' financial dealings, we would be hard-pressed to determine that the admission of the summaries "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *See Bray*, 139 F.3d at 1110-11 (concluding that the improper admission of summaries was not plain error where the appellant never claimed that the summaries were inaccurate).  Modena has

thus failed to meet his burden of showing that the admission of the summaries constituted plain error.

### D.   Prosecutorial misconduct

Modena next contends that the prosecutor engaged in misconduct during the closing arguments.  He specifically argues that the prosecutor vouched for several of the government's witnesses, pressured the jury to return a guilty verdict, and exhorted the jury to "send a message" with its verdict.  Modena, however, never objected to any of these arguments.  He must therefore show that their utterance constituted plain error.  *Koeberlein*, 161 F.3d at 949.

In reviewing a claim of prosecutorial misconduct under the plain-error standard of review, we must first determine whether the statements at issue were improper. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001).  If so, we then have to decide whether they were sufficiently flagrant to warrant reversal of the defendant's conviction despite his failure to object to them at trial.  *Id*. ("[P]rosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error, and is grounds for reversal even if the defendant did not object to it.") (quoting *United States v. Carroll*, 26 F.3d 1380, 1385 n.6 (6th Cir. 1994)).

Modena first maintains that the prosecutor improperly vouched for several of the government's witnesses when the prosecutor told the jury that these witnesses "got their lives together" after rejecting their former resistance to the federal tax laws.  He particularly finds fault with the following comments made by the prosecutor regarding Daniel Russell:

I've got to say it's real satisfying to see that this community lost an angry law breaker and may soon get back a productive, law-abiding man who will rejoin his family as a hardworking taxpayer and a positive role model for both the community and for his family.

This court has held that a "prosecutor cannot improperly vouch for the credibility of his witnesses." *United States v.*