**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  06a0600n.06**
**Filed:  August 21, 2006**

**No. 05-1793**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| VINCENT EARL THOMPSON, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  BATCHELDER, GIBBONS, and COOK, Circuit Judges.

COOK, Circuit Judge.  A jury found Vincent Thompson guilty of possessing cocaine base and marijuana with intent to distribute, *see* 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug crime, *see* 18 U.S.C. § 924(c)(1)(A), and possessing a firearm as a convicted felon, *see id.* § 922(g)(1).  Thompson appeals his conviction and sentence, and we affirm.

I

Police officers entered Thompson's house to execute a search warrant.  Inside the house, Officer Todd Eby witnessed Thompson dropping cocaine as he retreated from a front room.  The officers arrested Thompson and issued citations to several other people present at the time of the raid.  In addition, the officers confiscated crack cocaine, marijuana, a .357 handgun, and Thompson's identification card from the house.

Thompson opted for a jury trial and was convicted. The district court sentenced him to three concurrent terms of 360 months' imprisonment and one consecutive term of 60 months. On appeal, Thompson argues that part of Officer Eby's testimony at trial violated his right to confront adverse witnesses, that prosecutorial misconduct prevented a fair trial, and that the district court erred when it sentenced him as an armed career criminal under 18 U.S.C. § 924(e)(1).

II

A.  Confrontation Clause

Thompson asserts that the trial court violated the Sixth Amendment's Confrontation Clause by allowing Eby to recount a confidential informant's description of a controlled drug purchase. Eby testified that Thompson matched the informant's description of the person that sold drugs to the informant.

In light of *Crawford v. Washington*, 541 U.S. 36 (2004), and *United States v. Cromer*, 389 F.3d 662, 670-71 (6th Cir. 2004), the Government acknowledges error in the admission of Eby's testimony. But the Government also points to Thompson's failure to object on this point. We may only correct an error not raised at trial if the error (1) is plain, (2) affects substantial rights, and (3) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Cromer*, 389 F.3d at 672.

The Government suggests that the error in this case did not affect the fairness, integrity, or public reputation of the proceedings because the informant's statements played only a minor role in the case. The Government points to the wealth of other evidence inculpating Thompson. Eby testified that he witnessed cocaine dropping from Thompson's hand as he ran and saw him throw cocaine in the basement. The officers recovered a total of 11.34 grams of crack cocaine from three pieces of plastic wrap that Thompson dropped in the kitchen and the plastic wrap that Thompson threw in the basement. Another officer, Roland Brown, testified to finding a "large amount" of marijuana (33.28 grams), a gun, and Thompson's state identification card underneath some men's clothing in a dresser drawer in the bedroom that he believed to be Thompson's. The marijuana was packaged in 29 individual plastic bags. Brown averred that the weight and packaging of the drugs indicated that the drugs were intended for sale. Sergeant Fred Watkins, the officer in charge of the raid, testified that a drug user, as opposed to a drug seller, typically possesses one to two small bags of marijuana and .01 to .18 grams of cocaine, much smaller quantities than those recovered in this case. Watkins also testified that he found "numerous" "Ziploc bags" of the type commonly used to package drugs for sale. Officer Juan Davis, who entered the house behind Eby, similarly testified that "if you see a number of Ziplocs . . . there's a good indication that . . . they're . . . selling it."

Thompson counters that the government failed to "demonstrate beyond a reasonable doubt[] that the out-of-court statements made in violation of [his] rights secured by the Confrontation Clause did not influence the jury's verdict." But Thompson mischaracterizes the burden as the Government's. "Plain error review applies even if the forfeited assignment of error is a

constitutional error," *Cromer*, 389 F.3d at 672, and "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial." *United States v. Olano*, 507 U.S. 725, 734 (1993).

Thompson has not shown the error in this case to be prejudicial. The informant's description of Thompson comprised only a small part of the testimony and arguments in this case. In fact, the prosecution never mentioned the informant in its opening statement; rather the *defense* first brought up the informant in suggesting that the informant described someone other than Thompson. And the bulk of the officers' testimony involved Thompson's flight from the police, the packages of cocaine that he dropped, and the gun, individually-packaged marijuana, and identification card found in the dresser. Given the weight of the evidence against Thompson, this is not a case in which the informant's description of Thompson "likely impacted the outcome of the trial," *Cromer*, 389 F.3d at 679, and we find no reversible plain error.

## B. Prosecutorial Misconduct

Thompson claims that prosecutorial misconduct prevented him from receiving a fair trial. Again, Thompson's failure to object at trial mandates plain error review. *United States v. Abboud*, 438 F.3d 554, 583 (6th Cir. 2006).

"In reviewing a claim of prosecutorial misconduct under the plain-error standard of review, we . . . first determine whether the statements at issue were improper. If so, we then . . . decide

whether they were sufficiently flagrant to warrant reversal of the defendant's conviction despite his failure to object to them . . . ." *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002) (citation omitted). Thompson "bears the burden of showing that the prosecutorial misconduct in the present case was so exceptionally flagrant that it constitutes plain error." *Id.* at 635 (quotation omitted). We determine flagrancy using four factors: "(1) whether the statements tended to mislead the jury and prejudice the defendant; (2) whether the statements were isolated or pervasive; (3) whether the statements were deliberately placed before the jury; and (4) whether the evidence against the accused is otherwise strong." *United States v. Galloway*, 316 F.3d 624, 632 (6th Cir. 2003).

## 1. Closing Argument

Thompson points to the prosecution's closing argument, urging that the prosecutor acted improperly by reciting the informant's statements in closing arguments and by vouching for the informant's credibility.

First, Thompson reiterates his *Crawford/Cromer* argument. But even if *Crawford* rendered the prosecution's reference improper, this comment was not "so exceptionally flagrant that it constitutes plain error," *Modena*, 302 F.3d at 635 (quotation omitted), given the isolated nature of the comment and the weight of the evidence against Thompson.

Thompson also argues that the prosecution improperly vouched for the informant's credibility by using personal experiences to explain the differences between the informant's description of the person who sold him drugs and Thompson's characteristics. In his closing

argument, the prosecutor discussed the difficulty of correctly estimating a person's height and weight, illustrating this point by pointing to his own experiment in which his coworker incorrectly estimated his height and weight.

We agree with Thompson that the prosecution improperly relied on personal experiences in closing argument. *See Galloway*, 316 F.3d at 632-33 (holding prosecutor's statement based on personal knowledge from past trial experience to be improper); *Modena*, 302 F.3d at 634 (prosecutor's statement that witness was "law-abiding man" "at least implicitly conveyed to the jury the prosecutor's personal belief" of witness's credibility). But we find this impropriety insufficient to warrant a new trial. The prosecutor spent the bulk of the closing argument discussing properly admitted evidence, and Thompson offers nothing to show that the prosecutor's isolated comment "stemmed from a deliberate plan to inflame the jury as opposed to unduly-zealous advocacy." *United States v. Shalash*, 108 F. App'x 269, 281 (6th Cir. 2004). In addition, the government offered substantial properly-admitted evidence against Thompson. Thompson fails to demonstrate misconduct "so exceptionally flagrant that it constitutes plain error." *Modena*, 302 F.3d at 635 (quotation omitted).

### 2. Officer Davis's Testimony

Thompson also contends that the prosecutor denied him a fair trial by eliciting evidence of his post-*Miranda* silence. At trial, the following exchange took place between Officer Juan Davis and the prosecutor:

Q:      At some point and time did you have any other contact with Mr. Thompson?

A:      Well, yes.  Upon confiscation of suspected cocaine, I placed the Defendant under arrest and I recovered some U.S. currency which I turned over to the OIC then I advised the Defendant of his constitutional rights, which I didn't get any—receive any response from that.

Q:      Now in terms of confiscating money from—I'm sorry, not confiscating.  So that we're clear, when you say a confiscation, what does that mean to you?

The Supreme Court established in *Doyle v. Ohio*, 426 U.S. 610, 617-20 (1976), that the prosecution may not use a defendant's post-*Miranda* silence "to impeach an explanation subsequently offered at trial."  *Greer v. Miller*, 483 U.S. 756, 763 (1987) (quotation omitted). Thompson argues that the prosecutor violated *Doyle* by eliciting evidence of his post-arrest silence. The government maintains that it did not act improperly because it did not intend to elicit such testimony.  We discern no plain error.

This is not a case like *Doyle* and its progeny, in which "the trial court . . . permitted specific inquiry or argument respecting the defendant's post-*Miranda* silence."  *Id.* at 764; *see United States v. Baker*, 432 F.3d 1189, 1222 (11th Cir. 2005) ("[W]e have held that if the prosecution mentions the defendant's silence only in passing, and makes no specific inquiry or argument about the defendant's post-arrest silence, there is no due process violation.").  It is evident from the exchange in this case that the prosecutor had no intention of eliciting testimony regarding Thompson's silence. "*Doyle* does not impose a prima facie bar against any mention whatsoever of a defendant's [invoking his *Miranda* rights], but instead guards against the exploitation of that constitutional right

by the prosecutor." *Lindgren v. Lane*, 925 F.2d 198, 202 (7th Cir. 1991). "[T]he inadvertent mention" of a defendant's post-*Miranda* silence does not by itself offend *Doyle*. *See id.*

Thompson additionally complains that the prosecution introduced his post-arrest statements without proving that he waived his *Miranda* rights. Specifically, Davis testified that Thompson provided his address and other biographical information in response to Davis's questions. But "[t]his court has adopted the view that . . . the routine gathering of biographical data for booking purposes should not constitute interrogation under *Miranda*," *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993) (quotation omitted), and the district court did not plainly err by admitting Davis's testimony.

### 3. Testimony that Only Thompson Was Charged with a Felony

Thompson accuses the prosecution of improperly eliciting testimony that the police arrested Thompson and only issued citations to the other individuals at the house during the raid. Such testimony, Thompson asserts, "conveyed the clear and unmistakable message that only [he] could be responsible for the alleged crimes" and "implied that the government possessed additional but unexpressed knowledge that [he] was guilty." We disagree that this testimony conveyed such a clear and unmistakable message, and Thompson offers no case law to support his position. Assuming the testimony to be improper, we nevertheless conclude that Thompson fails to meet his "burden of showing that the prosecutorial misconduct in the present case was so exceptionally flagrant that it constitutes plain error." *Modena*, 302 F.3d at 635 (quotation omitted).

C. Sentencing

Finally, Thompson argues that the district court erred in sentencing him as an armed career criminal under 18 U.S.C. § 924(e). Section 924(e)(1) provides for a fifteen-year minimum prison sentence for a defendant who violates 18 U.S.C. § 922(g) and has three previous convictions "by any court referred to in section 922(g)(1)" for a violent felony, a serious drug offense, or both. Thompson asserts that "[a] review of 18 U.S.C. § 922(g)(1) reveals that no courts are referenced in that statute." But Thompson misreads the statute—it references "any court." *See id.* § 922(g)(1) (making it unlawful for any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year," to possess a weapon in or affecting interstate commerce). "[A]ny court," as used in the statute, refers to domestic courts, *see Small v. United States*, 544 U.S. 385, 394 (2005), and includes Article III courts and military courts. *United States v. Martinez*, 122 F.3d 421, 424 (7th Cir. 1997). Because the statutory language includes the courts in which Thompson was previously convicted, Thompson's challenge to his sentence misses the mark.

III

Thompson directs us to no reversible plain error by the district court, and his challenge to 18 U.S.C. § 924(e)(1) fails. We therefore affirm his conviction and sentence.