NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0311n.06

No. 05-2445

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

**Mar 21, 2012**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| NORBERTO QUINTANA, | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: CLAY and KETHLEDGE, Circuit Judges, DOW, District Judge.[*]

KETHLEDGE, Circuit Judge. A jury convicted Norberto Quintana of engaging in a continuing criminal enterprise for his marijuana and cocaine operations. The district court sentenced him to life in prison and imposed a $5,580 fine. He appeals, challenging the sufficiency of the evidence and the admission of an exhibit, as well as his sentence. We affirm.

I.

In May of 2004, Quintana was indicted for conspiracy to distribute marijuana and cocaine. Later the government issued a superceding indictment, charging him with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. A jury heard testimony from five co-conspirators, a jailhouse informant, and law enforcement agents, supplemented by a phone-record

---

[*]The Honorable Robert M. Dow Jr., United States District Judge for the Northern District of Illinois, sitting by designation.

summary compiled by the Drug Enforcement Agency. After a four-day trial, the jury found Quintana guilty. At sentencing, the court noted that his presentencing report indicated a criminal-history category of I and an offense level of 43 (which the court later reduced to 42). The guidelines recommended an imprisonment term between 360 months to life.

The government requested an upward departure under § 4A1.3 of the guidelines, arguing that Quintana's score understated his true criminal history because serious yet unprosecuted crimes had not been assigned criminal-history points. The presentence report contained detailed information about a Los Angeles murder charge that Quintana faced in 1985 (under the name Juan Jose Acevedo). Quintana fled to Mexico, and treaty requests to prosecute him there went unrecognized. The PSR also contained information about drug charges that Quintana faced in Colorado in 1996. He had delivered nine ounces of cocaine to an undercover officer, but then failed to appear at trial. Because of these crimes, the court found that category IV best represented his criminal history. That change in category, however, did not change Quintana's guidelines range. The court sentenced him to life in prison and imposed a fine of $5,580, below the guideline recommendations of $25,000 to $2,000,000.

Quintana filed a timely notice of appeal, but his counsel failed to file a brief. In 2010, we reinstated his appeal.

II.

A.

Quintana first argues that the evidence was insufficient to convict him. Quintana failed to make a Rule 29 motion for acquittal, so we review his sufficiency challenge only for a "manifest

miscarriage of justice," which "exists only if the record is devoid of evidence pointing to guilt."

*United States v. Walden*, 625 F.3d 961, 967–68 (6th Cir. 2011) (internal citations omitted). Here,

the elements of Quintana's continuing-criminal-enterprise offense are the following:

> (1) that the defendant committed a felony violation of federal narcotics laws; (2) that the violation was part of a continuing series of three or more drug offenses committed by the defendant; (3) that the defendant committed the series of offenses in concert with five or more persons; (4) that the defendant acted as an organizer, supervisor, or manager with regard to these five or more persons; and (5) that the defendant obtained substantial income or resources from this series of violations.

*United States v. Burns*, 298 F.3d 523, 535 (6th Cir. 2002) (internal citations omitted); *see also* 21

U.S.C. § 848(c).

Quintana contends that the government did not prove that he organized, supervised, or

managed five or more persons. When a person brokers the defendant's purchases, transports his

drugs, arranges for storage, or carries out his transactions, that person is acting under the defendant's

control. *See United States v. English*, 925 F.2d 154, 157 (6th Cir. 1991). A person can be controlled

even without personal contact. *See United States v. Davis*, 809 F.2d 1194, 1204 (6th Cir. 1987). But

merely proving a buyer-seller relationship between the alleged organizer and five people does not

suffice to show management. *See United States v. Elder*, 90 F.3d 1110, 1123 (6th Cir. 1996).

The government argued at trial that Quintana had managed seven people. But Quintana

argues that he did not "organize, supervise, or manage" three of them—Miguel Santos, Armando

Santos Gayton, and Iram—to the extent required for a continuing criminal enterprise. Therefore, the

government only needs to prove that Quintana managed one of the three contested men for his

conviction to stand.

As a threshold matter, Quintana contends that a person must participate in three or more of the enterprise's drug offenses to be counted as a managee under § 848(c). He did not present this legal argument to the district court, however, so he forfeited it. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006). Moreover, we have considered and rejected this precise argument in *United States v. Avery*, 128 F.3d 966, 973 (6th Cir. 1997). We decline to adopt Quintana's interpretation.

Quintana first disputes that he managed Miguel Santos. Santos accompanied Quintana to Chicago to pick up marijuana on one occasion, delivered Quintana's drugs on another, and cut cocaine at Quintana's Towing, the business Quintana used as a front for his cocaine distribution. Quintana contends that his mere presence with Santos on a drug-transportation trip is not sufficient to show that Quintana controlled him. Even if that were true, however, a jury could find that Santos was acting under Quintana's supervision based upon the other two incidents cited. *See English*, 925 F.2d at 157–58.

Quintana next argues that he did not manage Armando Santos Gayton, since Gayton was unilaterally recruited by another (undisputed) Quintana managee, Titi. The record contains ample evidence that Gayton sold drugs, traveled to and from Chicago to get cocaine, and cut and delivered cocaine for Titi. But Gayton also testified that he picked up drugs at Quintana's house on some occasions for Quintana. And Titi testified that he and Gayton mixed and cut cocaine for Quintana at Gayton's apartment. This evidence was enough for a jury to find that Gayton worked for Quintana. *See id.*

Quintana next contends that Iram was simply a customer rather than a managee. The government did not show that they shared more than a buyer-seller relationship, so Iram cannot count toward the five-managee requirement. *See Elder*, 90 F.3d at 1123.

Quintana concedes that the government presented evidence that he managed four other people. Adding Santos and Gayton makes a total of six managees, which satisfies that element of the offense. It would not be a "manifest miscarriage of justice" to let Quintana's conviction stand. *See Walden*, 625 F.3d at 967–68.

B.

Quintana next argues that the district court erred in admitting the summary exhibit of telephone calls he and others had made at trial. Quintana did not object to the summary's admission at trial, so we review the court's decision for plain error. *See United States v. Modena*, 302 F.3d 626, 632 (6th Cir. 2002). To be admissible, a summary exhibit "must be accurate and nonprejudicial" and "properly introduced through the testimony of a witness who supervised its preparation." *Id.* at 633; *see also* Fed. R. Evid. 1006. The document must summarize the underlying documents "accurately, correctly, and in a nonmisleading manner" and should not be "embellished" with "inferences drawn by the proponent[.]" *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1997).

Quintana notes that "Drug Enforcement Agency" was printed at the top of each of the nine pages of the summary. He argues that this title implied that the hundreds of telephone calls listed in the summary all concerned drug activity. But the summary did not contain any embellishments other than the name of the agency that prepared it. And at trial the government offered compelling, unrebutted evidence of Quintana's continuing criminal enterprise—such as the testimony of his

managees—without regard to the summary. *See Modena*, 302 F.3d at 633. Quintana cannot demonstrate that the district court committed plain error in admitting the document.

Additionally, Quintana claims that the phone summary lacked a proper foundation, since the officer who introduced the summary did not specifically testify that he supervised its preparation. But the officer testified that he obtained Quintana's telephone records, that those records were computerized, and that he obtained the computerized summary. If there was any error by the district court, it was not plain.

C.

Quintana also argues that the court abused its discretion during sentencing by departing upward from criminal-history category I to category IV. The government responds that the departure did not increase Quintana's sentence, since the guidelines recommend between 360 months' to life imprisonment for the offense level of 42, regardless of criminal-history category. *See* U.S.S.G. Ch. 5. (2004 ed.). Although Quintana's guidelines range did not change based upon the upward departure, the court used it to demonstrate why he deserved life imprisonment.

Here, the court departed upward under § 4A1.3 of the guidelines, based upon the pending charges for the 1985 L.A. murder and the 1996 Colorado drug trafficking. Quintana did not object to that section of the presentence report, and thus accepted those factual allegations. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) (internal citations omitted). The court reasoned that, if Quintana had been convicted of those charges, he would have received at least three criminal-history points for each. The court added an additional point for Quintana's "proclivity to escape while on bond," which was the reason why those charges were still pending and not yet

resolved. The addition of those seven criminal-history points was reasonable, and put Quintana in category IV.

Quintana argues that the district court improperly classified him in category IV without first considering categories II or III, as required by *United States v. Kennedy*, 893 F.2d 825, 828–29 (6th Cir. 1990). But the district court sufficiently explained its reasoning by outlining the number of criminal-history points warranted by each of Quintana's relevant criminal acts. And points are a more precise measure of a defendant's criminal history than categories. The district court did not abuse its discretion.

Quintana also argues that the court improperly attempted to influence his Bureau of Prisons' classification, since the Bureau uses a defendant's criminal-history category to determine where he will be confined. But the court did not assert authority over the location of Quintana's confinement; rather, the court merely attempted to render to the Bureau an accurate assessment of the safety risk that Quintana posed. His argument fails.

D.

Finally, Quintana argues that the district court's imposition of a $5,580 fine was procedurally unreasonable. Although Quintana did not object to the fine at the sentencing hearing, the court failed to ask, after imposing the sentence, if the parties had any objections that had not previously been raised. We therefore review for an abuse of discretion rather than for plain error. *See United States v. Zakharia*, 418 F. App'x 414, 423 (6th Cir. 2011). Quintana had the burden of establishing that he was not able to pay all or part of the fine. *See United States v. Tosca*, 18 F.3d 1352, 1354 (6th Cir.1994). In *Tosca*, we upheld a $7,500 fine that the defendant could pay in installments from his

Inmate Financial Responsibility Program earnings. *See id.* at 1354–55. Although Tosca's presentencing report indicated that he had no income or assets, he did not object to the fine at the sentencing hearing. *See id.* at 1353–54. The district court made no findings on the record regarding Tosca's ability to pay, but we inferred that the district court had considered the probability that he could earn enough in prison to pay the fine in installments. *See id.* at 1355.

Here, the presentence report noted that Quintana reported no assets or income and that he would likely be unable to pay a fine within the guidelines range—from $25,000 to $2,000,000—at the time of sentencing. But the presentence report also recommended a $5,580 fine, "based on a life expectancy of 25 years or 300 months." Quintana did not object to the recommendation. At sentencing, the court imposed the fine after stating that it had considered his ability to pay. The court also indicated that Quintana could pay in quarterly or monthly installments, based upon his Inmate Financial Responsibility Program earnings. We see no abuse of discretion.

The district court's judgment is affirmed.