NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0155n.06

Case No. 23-3895

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 20, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| DESSALINES SEALY, | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: MURPHY, DAVIS, and BLOOMEKATZ, Circuit Judges.

DAVIS, Circuit Judge. Dessalines Sealy represented himself at trial on charges of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 and conspiracy to commit bankruptcy fraud in violation of 18 U.S.C. § 371. The jury convicted him of both crimes. He now appeals his convictions, arguing that he did not knowingly, intelligently, and voluntarily waive his right to counsel. We disagree and **AFFIRM**.

## I.   BACKGROUND

A federal grand jury indicted Sealy and thirteen co-defendants for conspiring in a nationwide fraud scheme involving the use of bankruptcy filings, under the pretense of reducing or eliminating mortgage payments, to delay foreclosures against the homes of distressed homeowners. While Sealy initially faced charges of (1) conspiracy to commit mail and wire fraud, (2) multiple individual counts of mail fraud and wire fraud, and (3) multiple individual counts of

bankruptcy fraud, a superseding indictment narrowed the charges to one count of conspiracy to commit mail and wire fraud and one count of conspiracy to commit bankruptcy fraud.

At Sealy's initial appearance and arraignment on the indictment, the magistrate judge advised him of his right to counsel. Sealy asserted that he wanted to represent himself "as a pro persona and sui juris." (R. 117, PageID 612). Before allowing him to waive his right to counsel, the magistrate judge conducted a *Faretta* colloquy to determine Sealy's competence to waive his right to counsel. *See generally Faretta v. California*, 422 U.S. 806 (1975)**.** In doing so, the court explicitly expressed its need to "make sure that [Sealy's] waiver [was] knowing and voluntary." (R. 117, PageID 612).

During the *Faretta* colloquy, the magistrate judge asked a substantial number of the recommended questions contained in the guidance for federal judges. *Bench Book for United States District Judges*, § 1.02(C), pp 6–7 (64th ed. 2013). Specifically, the magistrate asked whether Sealy had studied law, whether he was familiar with the governing Federal Rules of Evidence and Federal Rules of Criminal Procedure, whether Sealy understood the charges against him, and whether Sealy thought having a lawyer would help him better understand the nature of the crimes and charges alleged against him. The magistrate judge also informed Sealy that the Federal Rules of Evidence and Rules of Procedure would not be relaxed in his proceedings merely because he opted to represent himself. And she confirmed that Sealy understood the court could not advise him how to represent himself; confirmed that he had received a copy of the indictment; confirmed that Sealy understood he could serve consecutive sentences if he was found guilty of more than one crime; and informed Sealy that he could change his mind if he later decided he wanted counsel. Sealy acknowledged the magistrate judge's points of inquiry and advice.

Based on Sealy's responses, the magistrate judge advised "that a trained lawyer would defend [Sealy] far better than [he] could defend [himself]." (R. 117, PageID 621). The magistrate judge pointed out that Sealy was "not familiar with the law" and firmly suggested that he "need[ed] the] legal assistance of someone who is well versed in the law." (*Id.*). The court "strongly urge[d]" Sealy not to represent himself. (*Id.* at 621). Yet, Sealy remained resolute in his decision. Ultimately, the magistrate judge found that Sealy had knowingly, intelligently, and voluntarily waived his right to counsel.

Sealy subsequently appeared before the district court for a motions hearing. Again, Sealy expressed his desire to represent himself. The district court, *sua sponte*, began another *Faretta* colloquy, but this time the inquiry was interrupted after only a few questions when Sealy challenged the district court's jurisdiction over his case and pursued other arguments as part of his defense. Before the district court was sidetracked, it asked whether Sealy had any experience in the law; whether he had ever represented himself in a court proceeding; whether Sealy had received a copy of the indictment; whether Sealy understood the potential penalty for his alleged conduct; and whether he understood his sentences could be served consecutively.

After hearing argument on jurisdiction, the district court again attempted to get Sealy to accept legal counsel, suggesting that he may benefit from consulting with a lawyer. Sealy again refused. Toward the end of the hearing, the district court again asked whether Sealy would consider its "offer of having counsel appointed for standby counsel to assist [him] in [his] defense." (R. 503, PageID 3833). Sealy refused, standing by his convictions. From this abridged inquiry, the district court also found that Sealy had knowingly, intelligently, and voluntarily waived his right to counsel without returning to the remainder of the *Faretta* colloquy.

The district court revisited the issue once more during a status conference hearing months later. In the midst of addressing several pretrial issues, the district court advised Sealy he would be better served by having a lawyer. And on the first day of trial, the district court confirmed Sealy's intention to proceed pro se yet again. Sealy represented himself throughout the trial. The jury convicted Sealy of both charges. And the district court subsequently sentenced Sealy to 60 months' imprisonment to be followed by a three-year supervised-release period. Sealy timely appealed.

## II.

*Standard of Review*. We review challenges to the sufficiency of an initial *Faretta* inquiry de novo. *United States v. Johnson*, 24 F.4th 590, 600–01 (6th Cir. 2022). The government contends that plain-error review should apply to the extent Sealy claims he should have obtained a second waiver assessment. We need not determine which standard applies here because Sealy's appeal fails under either standard.

*Knowing and Voluntary Waiver*. The Constitution provides that individuals facing criminal charges have the right to counsel to defend against government accusations in court. U.S. Const. amend VI. However, defendants can waive this right and represent themselves so long as the waiver of counsel is knowing, intelligent, and voluntary. *Iowa v. Tovar*, 541 U.S. 77, 81 (2004). Once a defendant has waived the right to counsel, the district court is not obligated to inquire again about the defendant's waiver unless the defendant revokes it or there is a "substantial change in circumstances" that suggests the court should revisit the waiver issue. *United States v. McBride*, 362 F.3d 360, 367 (6th Cir. 2004) (citation omitted).

Sealy contends that he did not knowingly, intelligently, and voluntarily waive his right to counsel because the district court did not substantially comply with *Faretta*. For support, he points to the district judge's completion of only five of fifteen recommended questions during the *Faretta* colloquy, relatively mild admonishment concerning Sealy's ignorance of the law and criminal procedure, and failure to strongly urge Sealy to allow third-party legal representation. Sealy also argues in the alternative that, even if the district judge did substantially comply with the requirement, Sealy never affirmatively waived his right to counsel after receiving the abridged *Faretta* warning.

Neither argument has merit. We reject Sealy's invitation to consider the second colloquy in a vacuum. The district court substantially complied with the *Faretta* colloquy. First, the magistrate judge asked Sealy at least eleven of the fifteen recommended questions, and strongly admonished Sealy to accept legal counsel. *See United States v. Modena*, 302 F.3d 626, 630-31 (6th Cir. 2002) (noting that a magistrate judge is authorized by statute to conduct a *Faretta* inquiry (citing 28 U.S.C. § 636(b)(1)(A))). Having been adequately warned of the potential consequences of moving forward pro se, Sealy refused legal representation. The magistrate judge asked Sealy whether he was acting voluntarily and subsequently found that his waiver of counsel was knowing, intelligent, and voluntary.

Then, at a later point in Sealy's case, although not obligated to do so, the district judge engaged in an additional, abridged *Faretta* colloquy. The court inquired whether Sealy had ever studied law, whether he had ever represented himself in a criminal action, whether he understood the charges against him and the potential penalties of those charges, and whether he understood that the sentences could be served consecutively. *See id.* at 630–31 (noting that the district court is not required to conduct a second waiver-of-counsel hearing even when the defendant expresses

momentary doubts about representing himself prior to trial). And on several other occasions leading up to trial, the district court gave Sealy the option to reconsider his decision to proceed pro se, suggesting that having a lawyer would be better. In this way, the court reiterated the dangers of self-representation. Each time, having already been apprised of the *Faretta* factors during the colloquy undertaken by the magistrate judge at his arraignment, Sealy decided to continue without counsel. Notably, Sealy never challenged the magistrate judge's finding that he had knowingly, intelligently, and voluntarily waived his right to counsel. And, despite Sealy's contention to the contrary, the district court never set aside the magistrate judge's finding.

These facts support our conclusion that the district court substantially complied with *Faretta*. After all, substantial compliance merely requires that "the questions asked by the court meet the objectives of the model inquiry." *United States v. Bankston*, 820 F.3d 215, 225 (6th Cir. 2016). It is not dependent on "a precise accounting of the questions asked." *Id.* Satisfying the objectives of the model inquiry focuses on ensuring that the court addresses the "relevant considerations," including "the defendant's familiarity with the law," appreciation of the "dangers of self-representation" and the "gravity of the charges." *Id.* at 227 (citation omitted). At minimum, the district court's questions and admonitions to Sealy complemented the magistrate judge's more fulsome inquiry and served the objectives of the model inquiry. And regardless, the magistrate judge's inquiry, the adequacy of which Sealy has not challenged, independently satisfied the *Faretta* requirements. In this context, Sealy did, in fact, affirmatively waive his right to counsel, and his waiver was knowing, intelligent, and voluntary.

Nothing about the district court's subsequent questioning undermined Sealy's previous waiver as knowing, intelligent, or voluntary. Sealy did not object to the determination that he knowingly, intelligently, and voluntarily waived counsel. And he points to no substantial change

which would have obligated the court to administer a second *Faretta* colloquy or treat the initial colloquy as superseded. *McBride*, 362 F.3d at 367. Moreover, Sealy cites no case stating that a district court must complete the colloquy after voluntarily engaging a second time.

### III.    CONCLUSION

We **AFFIRM**.